UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THERESA STEINBACH,

    Plaintiff,

    v.

VILLAGE OF FOREST PARK, an Illinois
municipal corporation, CRAIG LUNDT,
in his official and individual capacity,
ANTHONY CALDERONE, in his official
and individual capacity, and JOHN DOE 3,
in his official and individual capacity,

    Defendants.

No. 06 C 4215
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Plaintiff Theresa Steinbach ("Steinbach") is suing Defendant Anthony Calderone ("Calderone"), Mayor of the Village of Forest Park, Craig Lundt, a city employee, and the Village of Forest Park itself ("Forest Park").  Steinbach is the Commissioner of Forest Park and also a city employee.  She alleges that Defendants violated her privacy, and in the process, violated federal and state laws, by reading and forwarding emails from her professional email account to Calderone's account without authorization.  Steinbach alleges a total of fourteen counts against Defendants.  Defendants Calderone and Forest Park move to dismiss the complaint, in its entirety, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  For the following reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.

## II. STANDARD OF REVIEW

A Motion to Dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint, and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I must take all facts alleged in Plaintiff's complaint as true and draw all reasonable inferences from those facts in favor of the Plaintiff. *Caldwell v. City of Elmwood*, 959 F.2d 670, 671 (7th Cir. 1992). Plaintiff, for her part, must do more than solely recite the elements for a violation; she must plead with sufficient particularity so that her right to relief is more than a mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead her facts so that, when accepted as true, they show the plausibility of her claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plaintiff must do more than plead facts that are "consistent with Defendants' liability" because that only shows the possibility, not the plausibility, of her entitlement to relief. *Id.* (internal quotations omitted).

## III. STATEMENT OF RELEVANT FACTS

Steinbach was elected to the position of Commissioner of Forest Park in 2003, while Defendant Anthony Calderone was the elected Mayor of Forest Park. Upon her election, Forest Park provided her with an email account. Steinbach contacted Defendant Craig Lundt, an IT technician employed by Forest Park, to configure her Forest Park email to be forwarded to her personal email account, which was not associated with Forest Park.

In 2006, Steinbach ran for mayor against Calderone, but lost the election. Around May, 2006, Steinbach contacted Lundt because she was not receiving all of her Forest Park email in her personal account. To resolve the problem, Lundt gave Steinbach direct access to her Forest

Park email account through Hostway Corporation ("Hostway"), a third party webmail server. To use Hostway, Lundt gave Steinbach a username and password.

On July 7, 2006, Steinbach accessed her Forest Park email via Hostway for the first time. She was surprised to notice that her "sent" folder contained emails from her Forest Park account which were forwarded to Calderone. These forwarded emails included private emails from Steinbach's constituents. There were a total of eleven emails forwarded from Steinbach's account to Calderone's account. When news of the scandal broke, local papers interviewed Calderone. His official comment was that he was not involved.

On August 4, 2006, Steinbach filed her original complaint. After filing two amended complaints, she filed her final Verified Third Amended Complaint on March 26, 2009 containing fourteen counts against Calderone, Lundt, and the Village of Forest Park. Counts 1,[1] 3 and 4 are brought against Forest Park and Calderone, alleging violations of the federal Wiretap Act. Count 2 is brought against Lundt and Forest Park for a violation of the federal Wiretap Act.[2] Counts 5, 6, and 7 alleging violations of 720 ILL. COMP. STAT. 5/14, the Illinois eavesdropping statute, and brought against all Defendants have been voluntarily dismissed. Count 8, against all Defendants, alleges a violation of the tort of intrusion upon seclusion. Count 9, also against all Defendants, alleges a violation of the federal Computer Fraud and Abuse Act. Count 10 holds Forest Park liable for the actions of its employees through the doctrine of respondeat superior.[3] Counts 12,

---

[1] Steinbach voluntarily dismissed Count 1 in her Response to Defendants' Motion to Dismiss. (Response, 46).

[2] Lundt has his own counsel and is not part of this Motion to Dismiss. He has answered the complaint and all counts against him stand.

[3] Under respondeat superior, an employer is held responsible for the tortious actions of its employee. *Hansen v. Bd. of Trs. of Hamilton Southeastern Sch. Corp.*, 551 F.3d 599, 612 (7th

13 and 14,[4] brought against the Defendants individually, each allege a violation of the Stored Communications Act.

For the following reasons, Defendants' Motion to Dismiss will be granted in part, and denied in part.

## IV.  DISCUSSION

### A.  Counts 3 and 4 - Violations of the Federal Wiretap Act

The statute of limitations for the Federal Wiretap Act is two years.  18 USC § 2520(e)(2006).  Steinbach first discovered the alleged violation on July 7, 2006 when she opened her Forest Park email account through Hostway.  While Steinbach filed her original complaint on August 4, 2006, within the statute of limitations, she did not file the Verified Third Amended Complaint until March 26, 2009, more than two years after she first discovered the violation.  For an amended complaint to be considered filed within the two-year limitations period, it must relate back to the original complaint or the clock must be tolled by either equitable estoppel or equitable tolling.  When applied in this case, none of these doctrines aid the Plaintiff.  Therefore, Counts 3 and 4 are time barred and dismissed.

---

Cir. 2008).  Since some counts remain against Calderone, and all counts remain against Lundt, this count cannot be dismissed against Forest Park.

[4] Commissioner Steinbach has not alleged a Count 11.

### 1. Relating Back

The Defense argues, and Plaintiff does not dispute, that the limitations clock begins ticking when the plaintiff "had a reasonable opportunity to discover the violation" itself, not when the plaintiff discovered the identity of the violator. *Davis v. Zirkelbach,* 149 F.3d 614, 618 (7th Cir. 1998) (citing 18 U.S.C. § 2520(e)) ; *Andes v. Knox*, 905 F.2d 188, 189 (8th Cir. 1990). When Steinbach filed her original complaint, she named John Does 1, 2, 3 as defendants. As Steinbach learned the identity of each John Doe, she gradually replaced them with actual names in subsequent amended complaints. (First Amended Complaint named Craig Lundt, Second Amended Complaint named Mayor Calderone, Third Amended Complaint reiterated Lundt and Calderone as Defendants.)

Defendants correctly argue that these amended complaints do not relate back to the original complaint because they do not merely correct a mistake in the original complaint, but rather make substantive changes to the original complaint. Federal Rule of Civil Procedure 15(c) allows an amended pleading to relate back to the original pleading in three circumstances: (1) if the statute allows relation back; (2) if the amended pleading asserts a claim that arose out of the conduct set out in the original pleading; or (3) if the amendment changes the party against whom the claim is brought. Fed. R. Civ. P. 15(c)(1). If the amendment changes the party, the party must have received notice of the change, and the party must have known that the action would have been brought against it once the *mistake was corrected*. Fed. R. Civ. P. 15(c)(1)(C) (emphasis added).

When Steinbach changed the parties from John Doe to specific Defendants, she did not correct a mistake. Rather, she asserted new Defendants entirely. The Court of Appeals

5

addressed a similar situation in *Baskin v. Des Plains*. There, the plaintiff sued John Doe, then, after the statute of limitations expired, tried to substitute the identity of the defendant. *Baskin v. Des Plains*, 138 F.3d 701, 703 (7th Cir. 1998). The Seventh Circuit held that the plaintiff did not correct a mistake when he added the defendant's name, rather he did not know the name of the officer. *Id.* at 704. As such, the court found the amendment did not relate back. *Id.* Similarly, Steinbach did not learn of the identities of the parties until after the statute of limitations expired, at which time she amended her complaint and substituted the Defendants' identities. Just as in *Baskin*, Plaintiff is not correcting a mistake. Therefore, the amended complaints do not relate back to the original complaint, and Counts 3 and 4 of the Verified Third Amended Complaint are time barred.

### 2. Equitable Estoppel

The theory of equitable estoppel suspends the statute of limitations only when a potential defendant actively takes steps to prevent the plaintiff from suing during the limitations period. *Barry Aviation Inc. v. Land O'Lakes Min. Airport Comm'n.*, 377 F.3d 682, 689 (7th Cir. 2004). However, a potential defendant must actively attempt to prevent the plaintiff from suing, and this must be something beyond solely denying liability. *Id.* This "active attempt" does not require fraudulent activity or concealment steps, but it does require the defendant to take some affirmative action. *Singletary v. Continental Ill. National Bank & Trust. Co.*, 9 F.3d 1236, 1241 (7th Cir. 1993). Finally, a denial of liability is insufficient to trigger this theory, unless a fiduciary relationship exists between the plaintiff and defendant and the plaintiff has reason to rely on the defendant's statements. *Id.* If a denial of liability alone was sufficient to stop the

clock, then "statutes of limitations would be toothless; the only cases in which they could be successfully pleaded would be ones in which the defendant acknowledged liability." *Id.*

Examples of active attempts to forestall plaintiff's suit include the concealment of evidence from a plaintiff and a defendant's promise to waive a statute of limitations defense. *See Barry Aviation*, 377 F.3d at 689; *Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 394 (7th Cir. 2000). Where such a concealment or waiver results in plaintiff's failure to sue within the limitations period, equitable estoppel is an appropriate remedy. *Id.*

In this case, Steinbach argues that Calderone's statements to the press that he was not involved with the emails was an attempt to actively prevent her from filing on time. However, Calderone did not conceal evidence from Steinbach to prevent her from determining if she had a claim. Steinbach had a claim for a wiretapping violation regardless of what Calderone said publicly. Nor did the mayor promise to forgo a statute of limitations argument. Calderone took no active steps to prevent Steinbach from suing. His statements were merely denials of liability. However, "[i]t is not the denial of liability or a refusal to cooperate in making plaintiff's case that extends the statute of limitations, but affirmative efforts to delay the plaintiff's bringing suit." *Singletary*, 9 F.3d at 1241 (citations omitted). These affirmative efforts are absent here.

Furthermore, Steinbach does not allege a fiduciary relationship with Calderone. Without one, the statements of denial are not enough to trigger equitable estoppel. Where Calderone did not take any affirmative steps beyond denying his liability, and Steinbach does not allege the existence of a fiduciary relationship, the doctrine of equitable estoppel does not apply to extend the limitations period in this case.

### 3. Equitable Tolling

Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). This is different from equitable estoppel because it does not require any action on the part of the defendant to prevent the plaintiff from suing; rather, the burden is on the plaintiff to take the appropriate steps to gather all information. *Id.* The doctrine of equitable tolling is based on the assumption that the plaintiff knows he was injured, but cannot obtain the necessary information to determine if the injury was due to a wrongful act, and if so, whether the defendant could be liable. *Id.* It is important to note that this is an objective test: does a reasonable person have knowledge of a *possible* violation by the defendant? *Id.* (emphasis added). It is unrealistic to allow a plaintiff "all the time he needed to be *certain* his rights had been violated" because "the statute of limitations would never run–for even after judgment, there is no certainty." *Id.* (emphasis in original).

In this case, Steinbach cannot invoke equitable tolling because a reasonable person would have known that Calderone was a potential defendant. While it is true that Steinbach did not know for sure that Calderone would be a defendant, she is not required to have precise knowledge of who was at fault. A reasonable person would have realized that Calderone could be a potential defendant because he was her political opponent in the mayoral election, he had access to her account (through his position as mayor and his connection with Mr. Lundt), and he was the recipient of all the forwarded emails. Finally, his statements to the local newspaper were not enough to dissuade a reasonable person of his possible involvement with the emails.

Since the Verified Third Amended Complaint does not relate back to the original complaint, nor do either of the equitable remedies toll the statute of limitations, it expired prior to Steinbach filing her complaint. As such, Counts 3 and 4 must be dismissed.

### B.  Count 8 - Intrusion Upon Seclusion

Calderone attempts to dismiss Count 8 by way of two alternative theories: (1) the tort does not exist in Illinois; or (2) if the tort does exist, he is immune from state tort law claims. For the following reasons, his defense fails on both grounds and Count 8 against him stands. I will address his immunity first.

#### 1. Immunity Under State Law

Calderone argues that Count 8 should be dismissed because he is immune from state law claims under Illinois State Code. Calderone relies on Section 2-201 which makes a public employee immune from a suit for injuries arising out of an action that determines policy when he is acting within his discretion. 745 ILL. COMP. STAT. 10/2-201. The statute allows immunity even where an employee abuses this discretion. 745 ILL. COMP. STAT. 10/2-201. However, in order for an employee to be immune, the action at issue must involve both a determination of policy *and* an act of discretion. *Albers v. Breen*, 806 N.E.2d 667, 675 (Ill. App. Ct. 2004) (emphasis added). An employee makes a policy decision when he is forced to make a decision that he thinks will best balance competing interests. *Id.* An act of discretion is an act that is unique to a particular public office, a non-ministerial act. *Id.*

Applying the standard of review to the case at bar, I must accept as true that Calderone forwarded emails from Steinbach's email account to himself. Calderone alleges nothing to suggest that his access to or forwarding of the emails was a policy decision on his part. There

are no competing interests involved which forced him to make a judgement call. He cites no reason, in either his motion or reply, why such a decision would qualify as one of policy. Since one of the elements of immunity is not met, the entire immunity defense must fail. Therefore, Calderone is not immune from state law claims.

### 2. The Tort Of Intrusion Upon Seclusion

While it is true that the Illinois Supreme Court has not explicitly recognized the tort of intrusion upon seclusion, this Court has found that the tort does exist. *Ludemo v. Klein*, 771 F. Supp. 260 (N.D. Ill. 1991) (Zagel, J.). When state tort law is unclear, a federal district court can follow the decisions of the state appellate court governing the geographical area where the alleged tort took place, unless there is reason to believe the Supreme Court of Illinois would decide the question differently. *Id.* at 261-62. In diversity cases it is the determination of what the highest court of the state would do that is the key question. Forest Park is located in Cook County, which is in the First District, case law from First District Appellate Court governs. The First District formally recognized the existence of the tort in Illinois. *Busse v. Motorola, Inc.*, 813 N.E.2d 1013 (Ill. App. Ct. 2004). Therefore, this Court recognizes the existence of the tort under the First District ruling, since there is no hint of contrary reasoning from the highest court in Illinois.[5]

---

[5] An alternative method for determining state law, especially when there is a conflict among state appellate courts, allows a federal district court to decide according to what it believes the state supreme court would decide. *Ludemo*, 771 F. Supp. at 261. In 1989, the Illinois Supreme Court decided *Lovgren v. Citizens First National Bank*, finding that the defendant's actions did not constitute an unlawful intrusion upon seclusion. 534 N.E.2d 987 (Ill. 1989). While the Court declined to formally recognize the tort in Illinois, it is difficult to measure conduct against a tort which does not exist. *Ludemo*, 771 F. Supp. at 261. Therefore, the Court must have implicitly recognized that the tort exists in Illinois. *Id.* Thus, under either method of determining state law, the tort of intrusion upon seclusion exists in Illinois.

Under *Busse*, all four elements of the tort must be satisfied. *Id.* at 1017. These elements are: (1) defendant committed an unauthorized prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive to the reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused plaintiff to suffer. *Id.*

Calderone first argues that his access to Steinbach's email was authorized by Illinois statute. Section 3.1-35-20 states that "the mayor or president at all times may examine and inspect the books, records and papers of any agent, employee or officer of the municipality." 65 ILL. COMP. STAT. 5/3.1-35-20. It is true that "records" includes all "digitized electronic material," thus including email within the definition. 5 ILL. COMP. STAT. 160/2. While there is minimal case law interpreting the statute, it is clear that it does not give a mayor carte blanche access to use the records for his own use. In one case, the court found a city mayor was authorized under the statute to access private juvenile records which discussed questionable police officer behavior. *People v. Urbana,* 338 N.E.2d 220, 221, 222 (Ill. App. Ct. 1975). That access is different from what Calderone is accused of here. In *Urbana*, the mayor was not using the access for his own personal use, but for an official city investigation related to his position as mayor. *Id.* at 221. Here, Calderone did not access Steinbach's email for any official purpose, but rather for his own personal gain. Therefore, Defendant's argument that his actions were statutorily authorized fails. Calderone also argues that Steinbach did not sufficiently plead the privacy of the emails. In the Verified Third Amended Complaint, Steinbach alleges that the emails were meant and intended to be private. Complaint, ¶¶ 28, 40, 43. Steinbach sufficiently pled the third element of the tort to survive a Motion to Dismiss. Whether the emails actually

were private is a question of fact which cannot be determined at this stage. Therefore, Count 8 must stand.

### 3. Count 9 - Violation Of Computer Fraud and Abuse Act

In Steinbach's Verified Third Amended Complaint, she alleges a violation of the Computer Fraud and Abuse Act (CFAA). In 2006, this act allowed a plaintiff to seek civil remedy only if a defendant violated subsection 1030(a)(5). 18 USC § 1030(g) (2006). However, in September, 2008, Section 1030(g) was amended so that a plaintiff may only seek civil remedy for violations of subsection 1030(c)(4). 18 USC § 1030(g) (2008). Steinbach fails to allege a civil violation under either version.

In their briefing, both parties cite to the 2006 version of the CFAA. In her complaint, Steinbach alleges that Calderone violated CFAA Section 1030(a)(4), which, under the 2006 statute, does not result in civil liability. Using the plain language construction, a court should first look to the plain language of a statute, then only contradict it if there is clear and express legislative intent showing a different interpretation. *Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1270 (7th Cir. 1993). In this case, there is no legislative history suggesting that Congress intended to expand liability in subsection (g) beyond what it expressly named as civil violations.

Furthermore, under the 2008 version, Steinbach's allegation of a violation of Section 1030(a)(4) does not allow for a civil remedy. The amended statute only provides a civil remedy for violations of Section 1030(c)(4). 18 USC § 1030(g) (2008). Since Steinbach has failed to allege a civil violation under either version of the statute,[6] Count 9 must be dismissed.

---

[6] For this reason, there is no need to engage in any analysis with regard to which version of the CFAA should apply.

**4.  Counts 12 and 14 - Violations of the Stored Communications Act**

The Stored Communications Act is violated by unauthorized access to electronic communication while in electronic storage.  18 USC § 2701(a)(1) (2006).  "Electronic storage" is defined as (a) temporary, intermediate storage; and (b) storage for purposes of backup protection.  18 USC § 2510(17)(A), (B) (2006).  There is some controversy regarding what it means for an email to be stored for backup protection.  The most persuasive reasoning comes from the Third Circuit in *Theofel v. Farey-Jones*.[7]  The Third Circuit found that an email could be stored for backup protection purposes if it is retained so that it can be accessed and downloaded again, for example in the event that the email was accidentally deleted.  *Theofel*, 341 F.3d 978, 985 (9th Cir. 2003).  Defendants rely on *Fraser v. Nationwide Mutual Insurance Co.* where the court found that "backup protection" refers to a state of temporary backup storage.  *See id.* (discussing *Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623 (E.D. Pa. 2001)).  I am not persuaded by this view.  If "backup protection" included temporary storage in its definition, then Section 2510(17)(a) would be unnecessary since it specifically refers to temporary, intermediate storage.  *Id.*  It is necessary to construe these two subsections in such a way that each has individual meaning, and to do so, I adopt the Third Circuit's interpretation.  At this point, however, it is unclear *why* the emails in Commissioner Steinbach's account were stored.  It is vital to determine whether the emails were stored either temporarily or for backup protection in order to determine if any of the defendants violated the Stored Communications Act.  Therefore, these counts must survive this motion.

---

[7] The Seventh Circuit has not addressed this question.

Additionally, the Stored Communications Act is not violated if the communications are accessed by the entity providing the electronic service. 18 USC § 2701(c)(1). Calderone argues that he falls under this exception as an agent of Forest Park since Forest Park provided Steinbach with her email address. This exception does not apply to Calderone. While Forest Park did provide the email address *name* to Steinbach, Hostway, a third party, provided the email *service*. The exception only applies when the defendant itself provides the electronic communication service, not when an outside party, or middleman, provides the service. *In re Jet Blue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005). In *Jet Blue*, a company purchased Internet access from a third-party provider, and the court found that the company did not provide the Internet service for purposes of the exception. *Id.* The same analysis applies here. Hostway provided access to the email account; Forest Park was not the service provider. Therefore, the exception does not apply to Calderone or Forest Park.

Since Calderone does not fall within the immunity exception, and because further discovery is necessary to determine the purpose of retaining the emails, these counts must survive the Motion to Dismiss.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted as to Counts 3, 4 and 9 and denied as to Counts 8, 10, 12 and 14.

                                              ENTER:

                                              _____
                                              James B. Zagel
                                              United States District Judge

DATE:  July 14, 2009